Heagy v. Black *et al.*

---

No. 9304.

## HEAGY v. BLACK ET AL.

INJUNCTION.—*Harmless Error.*—*Practice.*—The refusal to dissolve a temporary restraining order is not available error upon an appeal from a judgment for a perpetual injunction; to present any question upon such ruling the grounds of the motion must be shown by bill of exceptions.

SAME.—*Joinder of Parties.*—*Location of Highway.*—*Trespass.*—Where a supervisor, claiming to act under an order of the board of county commissioners locating a highway, attempts its location on a line deviating from that named in the order, he is guilty of a trespass, and each land-owner over whose lands he is threatening to open the road, if he has no adequate remedy at law, may maintain an action to enjoin such trespasser, but such land-owners, having separate and distinct causes of action for such trespasses, can not join as plaintiffs in such an action; but where the proceedings of the board are void, and irreparable damage would be done to the property of each of a number of persons by the acts of the supervisor

Heagy *v.* Black *et al.*

in opening the road on the line designated by such proceedings, a joinder is permitted to avoid a multiplicity of suits.

HIGHWAY.—*Report of Viewers.—Public Utility.—Presumption.*—It is not necessary to the validity of the order of the board of county commissioners locating or changing a highway in a proceeding for such purpose, that the viewers should report the proposed road of public utility, or that the board should expressly so find. If the report be favorable, and silent as to the public utility of the location or change, or if they do not report that the location or change is not of public utility, it should be presumed that they deemed it of public utility.

SAME.—The report of viewers appointed to locate or change a highway will be presumed to have been made in conformity with the statute, where nothing to the contrary appears.

SAME.—*Notice.—Collateral Attack.—Jurisdiction.*—That the notice of the presentation of a petition for the location or change of a highway was given, is a jurisdictional fact to be determined by the county board, and where it has found that notice was given, and proceeded to act by the appointment of viewers, its decision is conclusive of such notice as against collateral attack.

SAME.—*Injunction.—Complaint.*—For complaint and allegations held insufficient to restrain by injunction the location of a highway under an order of a county board, see opinion.

From the Kosciusko Circuit Court.

*C. Clemans* and *A. C. Clemans,* for appellant.

*H. S. Biggs* and *J. W. Cook,* for appellees.

BLACK, C.—The appellant was the defendant, and Noah Black and John Trump were the plaintiffs, in a suit to enjoin the defendant, a road supervisor, from removing fences and opening a highway over certain lands of the plaintiffs in Kosciusko county.

A restraining order was granted in vacation until the third day of the next term. On the first day of that term, the defendant moved to dissolve the restraining order and to dismiss the cause. On the next day, the court overruled the motion, and thereupon the defendant demurred to the complaint for want of sufficient facts. The demurrer was overruled, and further proceedings, which need not be specially mentioned, resulted in a perpetual injunction, and the defendant appealed.

Since the cause was submitted in this court, said Noah Black has died, and said John Trump has been appointed administrator of his estate, and as such has been substituted as an appellee for said Noah Black, deceased. One of the assignments of error questions the action of the court "in overruling the appellant's motion to dissolve the temporary injunction and dismiss the cause."

There can be no available error in refusing to dissolve an interlocutory injunction upon an appeal from a final judgment for a perpetual injunction. *Board of Comm'rs* v. *Markle,* 46 Ind. 96. But the ruling upon this motion could not be reviewed, for the reason that the grounds of the motion are not shown by bill of exceptions.

Of the other specifications in the assignment of errors, we need only notice that by which it is assigned that the court erred in overruling the demurrer to the complaint.

The complaint showed that the plaintiff Noah Black was the owner in fee simple of the southwest quarter of section 25, township 32, range 7 east, in said county, and that the appellee John Trump was the owner in fee simple of the northwest quarter of the same section, except sixty acres off the north side thereof; that on the 10th of March, 1879, one Alfred Hoover and others filed their petition before the board of commissioners of said county, asking for the location of a public highway on the section line between section 25 and section 26 in said township, and the vacation of an old road running in the same general direction; that the plaintiffs did not join in said petition, and never consented that the proposed highway might be established and run through their lands or the land of either of them or their enclosures. It was alleged that the board of commissioners appointed viewers, who reported that in their opinion the public would not be in any way injured by said proposed change; that the board ordered that said change and vacation be granted as set forth in the report of the viewers, and that said road should be vacated when the new road should be made as good and

passable as the old road, by the petitioners, to the acceptance of the proper township trustee; that the defendant was pretending to act as a supervisor in said county, and was threatening to throw down the enclosure and fence of the plaintiff Black, commencing at the southwest corner of his said land, and to open and cut a new road through his said enclosure, running a little diagonally to the present line and road and encroaching on his enclosure all the length of said line, until at the northwest corner of his said land it should be about four rods from the present line; that by so throwing down his fence his enclosures, containing growing wheat and ungathered corn, and his pasture land would be exposed to the common; that the appellant was threatening to make and open a road along said line, to make which it would be necessary to dig up and excavate the earth along the route to the depth of eight or ten feet at places, and he would destroy certain bearing fruit trees, planted and cultivated for said Black's orchard, and certain shade and ornamental trees, particularly described, in said Black's front yard; that said farm was improved, and the houses and buildings were built with reference to the old road, which had been located for about thirty-five years; that the proposed road would run within six or eight feet from the front door of plaintiff Black's dwelling-house, and would destroy his milk and spring-house and his well; that said road would throw open and expose to the common the orchard and pasture of the plaintiff Trump, his clover field and his field of growing wheat; that eighty rods of his fences would be torn down and destroyed, and his certain bearing fruit trees would be destroyed; that to construct said road there would have to be great digging up of the ground and excavating the earth, in places along said road, about six feet, and filling it in at other places to great depth; all of which acts the appellant was threatening to do and would begin to do, as the supervisor of roads of said township, with a large force of hands and teams, on the next Thursday. It was alleged that the proposed road would not run on the " line di-

viding the lands of the parties," but the old road ran on that line; that the appellant had no authority of law to open said road; that the viewers did not report, and said board did not find, in any form, that said proposed highway was or would be of public utility; that said board never ordered said road opened; that it will be seen from reading the record of said board in said matter that no notice was given, as provided by law, of the application for such change and vacation, and therefore the board had no jurisdiction to appoint viewers; that the petition does not set out the full names of all the parties and owners of the lands through which said change would pass; that said road would run through the enclosures of the plaintiffs of more than one year's standing; that the plaintiffs were first informed of the intention of the appellant to throw down their fences and expose their crops and enclosures to the commons, and to excavate and make said proposed road, "yesterday"; that he had notified the hands in his district, as the supervisor thereof, to appear on said ground on the next Thursday, for the purpose of opening said road, and that if he were not restrained he would proceed, etc.

There is obscurity as to the purpose of the pleader in some portions of the complaint. While it is not alleged that the defendant was about to open the new highway upon a line other than that proposed in the petition for its location and designated in the report of the viewers, which coincides with the west line of the lands of the plaintiffs, as described in the complaint, it is stated, in substance, that a portion of said lands would lie west of the new road, which would not run on the line dividing the lands of the "parties," the pleader probably meaning thereby the plaintiffs and the owners of lands lying immediately adjoining those of the plaintiffs on the west. There seems to have been an intention to raise a controversy about the true location of the section line.

The complaint does not show a joint or common interest of the plaintiffs in the lands mentioned, but shows that each owned a distinct portion thereof in severalty.

Heagy v. Black *et al.*

If the proceedings before the board of commissioners were not void, the defendant could not be enjoined at the suit of either or both of the plaintiffs, from doing such damaging acts as were mentioned in the complaint in the opening of the highway upon the line established by said proceedings. If, said proceedings not being void, the defendant was about to open a highway upon a line deviating from that so established, and to do such acts for that purpose, or if said proceedings were void, the acts threatened by the defendant would be his individual acts, and would constitute a private trespass. *Sidener* v. *Norristown, etc., Co.*, 23 Ind. 623; *Bolster* v. *Catterlin*, 10 Ind. 117; *Lewis* v. *Rough*, 26 Ind. 398. And the threatened acts, if unauthorized, would constitute such a trespass that either plaintiff, being without a plain and adequate remedy at law, might maintain a suit to enjoin the defendant. · *Daubenspeck* v. *Grear*, 18 Cal. 443; *Shipley* v. *Ritter*, 7 Md. 408; *Wilson* v. *City of Mineral Point*, 39 Wis. 160; *Thatcher* v. *Humble*, 67 Ind. 444.

Could the plaintiffs join in such a suit as this?

If it was intended to allege in the complaint that the defendant was about to open the road on a line other than that established by the board, we think the plaintiffs could not unite on that ground, and that such allegation was immaterial in a joint suit. Such deviation would be a separate and distinct trespass as to each plaintiff. One would not be affected by the encroachment or trespass upon the land of the other. The issue to be tried as between the defendant and one plaintiff would be wholly different from that between the defendant and the other plaintiff. Each would have a right to equitable relief, but neither one upon the same grounds as the other, nor on grounds wholly like those of the other. Each could show that his injury would be irreparable, and that it would be occasioned in the execution of the same general purpose, but the excavations and the destruction of trees, etc., which would constitute the irreparable damage, would be different in each case. The evidence which would show

the damage of one would not show any damage to the other, and the plaintiffs would have no common interest; there would be no single wrongful or invalid act, official or private, which would comprehend in its effect the common or the separate injury of both. *Marselis* v. *Morris, etc., Co.*, Saxton, 31.

If, the purpose being to prevent the opening of the road as ordered by the board, each plaintiff would be irreparably damaged as to his separate property, would the additional fact that the proceedings of the board of commissioners were void, constitute such a community of interest as to authorize the joinder of the plaintiffs? We think that to this question the answer must be in the affirmative, that such a joinder is permissible to avoid a multiplicity of suits.

It is well established in this State by many decisions, that a number of taxpayers may unite to enjoin the collection of an illegal tax affecting them separately, or to set aside as void illegal proceedings of local officials, whereby a debt, which would result in taxation, would be unlawfully created against a county, city or town, of which such plaintiffs are taxpayers; and that a number of individual owners of separate lots or lands may unite to enjoin the enforcement against such lots or lands of an assessment for a local improvement and to set aside such assessment because of its illegality. No adequate remedy can be granted at law to such taxpayers or owners, and in this State they may separately maintain the suit for injunction; or, to prevent a multiplicity of suits, they may unite. In such cases, the fact that the object of the suit on the part of each plaintiff is to protect his property, in which the others are not interested, does not prevent their joinder. The illegality of one act or proceeding which affects them all injuriously, in like manner, furnishes a sufficient community of interest to permit their joinder for the purpose of suppressing a multiplicity of suits.

We think that the principles which authorize such joinder are applicable to the case at bar, and that if the facts stated in the complaint show that the proceeding before the board

of commissioners was void, the plaintiffs were entitled to join in the action, and the complaint is sufficient. It is, therefore, necessary to examine the allegations in regard to the proceedings before the board.

It was not necessary that the viewers should report that the proposed road would be of public utility, or that the board should expressly so find. The statute, section 5016, R. S. 1881, provides that if the viewers "shall deem the highway to be located or the change to be made of public utility, they shall lay out and mark the same on the best ground, not running through any person's inclosure of one year's standing, without the owner's consent, unless, upon examination, a good way can not otherwise be had."

The next section provides that such viewers shall make a report of their proceedings at the next session of the board of commissioners, "giving a full description of such location, change, or vacation, by metes and bounds and by its course and distance; except that in case of the vacation of a road, or any part thereof, such description only as will designate it clearly shall be required."

When objection is made to the proposed highway, vacation or change, as not being of public utility, and thereupon other viewers are appointed, as provided in section 5023, these other viewers shall report whether or not, in their opinion, it will be of public utility.

If the report of the viewers appointed as were those mentioned in the complaint be favorable to the location, vacation or change, and silent on the subject of public utility, or if they do not report the proposed highway or change not to be of public utility, it should be presumed that they deemed it of public utility. The report in this case was not to the effect that the proposed change would not be of public utility. The viewers reported that, in their opinion, the public would not be in any way injured by the proposed change. This part of the report was merely surplusage.

Nor does the statute require that the board shall indicate

their finding that the proposed highway, vacation or change is of public utility, except as this may be inferred from their decision in favor of the proposed highway, vacation or change. The board is guided by the report of the viewers. Upon the coming in of the report, it is provided by section 5018, R. S. 1881, that if no objection be made to the proposed highway, vacation or change, the board shall cause a record thereof to be made, and shall order the same to be opened and kept in repair; and section 5028 provides that the order for laying out any highway shall specify its width.

It is alleged in the complaint, in one place, that the commissioners never ordered the road opened; but it is said in another place that the board ordered that said change and vacation be granted as set forth in said report. We must presume, against the pleading, that the report of the viewers was in conformity with the statute, except as the contrary may be shown, and that it gave a full description of the location by metes and bounds, and by course and distance, and that it clearly designated the old road to be vacated. This averment of the order made by the board must be regarded as destroying whatever effect could be claimed for the allegation that the board never ordered the road opened.

But it is alleged that the board further ordered that said road should be vacated when the new road should be made as good and passable as the old road, by the petitioners, to the acceptance of the proper township trustee.

A statute enacted in 1855, being section 5051, R. S. 1881, provides: " Whenever any person shall procure the establishment of a highway, private or public, by a change of one already established on or across his own land, before the same shall be received by the proper superintendent as such, it shall be made as passable as the old highway, or as nearly so as the nature of the case will admit, of which fact the trustee of the township in which the change is made shall be duly satisfied before such superintendent shall be required to keep it in repair."

We suppose that the board of commissioners had this statute in contemplation in the making of the order mentioned in the complaint. It may be presumed, as was shown on the trial, that the supervisor was acting under the proper order from the trustee. We can not say that the statute was not sufficiently complied with. The supervisor's proposed action was the practicable mode of carrying out the order against the unwilling land-owners. He would not be acting under an order which the board had not authority of law to make.

The complaint alleged that it will be seen from reading the record of the board of commissioners, that no notice was given, as provided by law, of the application for the change and vacation, and that, therefore, the board had no jurisdiction to appoint viewers.

This is a collateral attack upon a judgment of a court of record of limited and special jurisdiction. The statute provides, " Whenever twelve freeholders," etc., shall petition the board for the location, vacation or change of any highway, " such board, if it shall be satisfied that due notice of such application has been given by publication," etc., " shall appoint three persons to view such highway." R. S. 1881, section 5015. The presentation of the petition required by the statute gives the board jurisdiction to make this inquiry concerning notice. The giving of the notice is a jurisdictional fact, and if the board has found that due notice was given as provided by the statute, and has proceeded to act by appointing viewers, the decision in regard to notice is conclusive.

It was not alleged that the notice required by law was not given, and that the board did not find that it had been given; and if the record must show that the board did so find, otherwise than by showing that viewers were appointed, it was not alleged that the board's record did not show that it did so find.

It can not be alleged by way of collateral attack, that it will be seen from reading the board's record that no notice was given as provided by law. Board, etc., v. Markle, 46 Ind.

96; Board, etc., v. Hall, 70 Ind. 469; Miller v. Porter, 71 Ind. 521; Stoddard v. Johnson, 75 Ind. 20; Argo v. Barthand, 80 Ind. 63; Wright v. Wells, 29 Ind. 354; Kissinger v. Hanselman, 33 Ind. 80; Wild v. Deig, 43 Ind. 455 (13 Am. R. 399).

The statute provides that in the petition for the location, change or vacation of a highway, "the names of the owners and occupants or agents of the lands through which the same may pass" shall be set forth. R. S. 1881, section 5001; Hays v. Campbell, 17 Ind. 430.

The complaint alleged that the petition did not set out the full names of all the parties and owners of the lands through which said change would pass. If the failure to set forth in the petition the names of all the owners and occupants or agents of such lands can be ground for collateral attack, and that, too, by one not alleging that he was not himself named, the complaint did not show a failure to comply with the statute. It might be, notwithstanding what was alleged, that the statute was complied with as to those lands, the owners of which were not named in the petition, by naming the agents thereof.

The question of the passing of the road through enclosures of one year's standing without the owner's consent, even if it were alleged that a good way could otherwise be had without departing essentially from the route petitioned for, if not raised before the commissioners, could not be raised in a direct attack by appeal; and whether raised before the commissioners or not, can not be raised in a collateral attack. It is not a question affecting the jurisdiction of the commissioners. See Crossley v. O'Brien, 24 Ind. 325; Green v. Elliott, 86 Ind. 53.

If it would be a sufficient ground for a joint action by the plaintiffs, that they were not notified by the supervisor according to section 5030, R. S. 1881, to remove their fences, this was not alleged. The fact that they did not know until "yesterday" that he would throw down their fences and expose their crops, etc., could not be a sufficient reason for his being restrained by injunction from doing such acts.

The complaint was insufficient on demurrer, and, therefore, the judgment should be reversed.

PER CURIAM.—It is ordered, upon the foregoing opinion, that the judgment be reversed, at the costs of the appellees, and the cause is remanded, with instruction to sustain the demurrer to the complaint.